## Richmond

JAMES E. MARTIN, ET AL. V. HATTIE W. BASHAM.

April 23, 1976.

Record No. 750658.

Present, All the Justices.

*Arthur E. Smith,* for appellants.

*Larry W. Wertz,* for appellee.

POFF, J., delivered the opinion of the court.

The subject of this appeal is a compromise settlement *vel non* of a suit for specific performance of a contract of sale.

James E. Martin and Mary C. Martin, his wife (purchasers), filed a bill of complaint seeking to compel Hattie W. Basham (seller) to perform a contract to sell her residence. Counsel for the parties entered into negotiations for settlement under which, in consideration of a cash payment by seller, purchasers were to accept a decree dismissing the cause as agreed. Seller tendered payment, but purchasers, contending that no binding settlement had been consummated, refused the tender.

Seller then filed a petition in the original cause seeking specific performance of the settlement agreement. Chancellor Stanford L. Fellers recused himself, and counsel for both parties withdrew in

order to appear as witnesses in the cause before Chancellor Robert J. Rogers. A jury was empaneled to try certain issues out of chancery. By letter opinion dated December 17, 1974, and final decree entered February 13, 1975, the chancellor held that the evidence was sufficient to sustain the jury's findings, that seller was entitled to specific performance of the settlement agreement, and that the cause should be dismissed from the docket.

The testimony concerning settlement negotiations was in sharp conflict. Under familiar principles, we view the evidence in the light most favorable to seller. On October 2, 1973, Chancellor Fellers heard argument on depositions and memoranda of law in the suit on the sale contract. He suggested to both parties that this suit should be settled. G. Marshall Mundy, seller's counsel, testified that B. K. Cruey, purchasers' counsel, "stated that his client would settle the case for $5000"; that although he felt "that the figure was outrageously high" and asked if purchasers would not "take something less than that . . . $2000 or something in that vicinity", he never rejected the offer or made a counter offer; and that he communicated purchasers' offer to seller and "continued to have periodic discussions [with Cruey] regarding the case and the settlement of it." Cruey asked Chancellor Fellers to make a ruling in the suit on the sale contract. By letter of October 16, 1973, addressed to both counsel, Chancellor Fellers announced that he was "of the opinion that the [purchasers] are entitled to specific performance."

Mundy testified that he and Cruey "discussed the case by telephone" and in chance meetings on the street and that "[s]ubsequent to receiving this letter, he still maintained that his client still wanted nothing less than $5000 to settle the case." Cruey notified Mundy that he intended to present a decree awarding purchasers specific performance of the sale contract. On the morning of the day set for the presentment, October 29, 1973, Mundy handed Cruey a letter of even date stating that "Mrs. Basham has agreed to accept the offer of your clients . . . to settle this case for $5000.00." The presentment hearing was cancelled, and no decree was entered. Mundy testified that Cruey later "suggested that I have my client send him the check and I did that by November 16th letter"; that subsequent to that letter "Mr. Cruey came back to me and said, 'Well, what my client meant was $5000 net . . .' and that it was really going to take $5000 plus his attorney's fee to settle the case. That was the very first mention I had heard of any attorney's fee"; that he told Cruey that,

without waiving his position that a settlement of $5000 gross had been consummated, he would convey the question of attorney's fee to his client; that although seller authorized the additional payment, Cruey then said that his clients "just want the house." Cruey confirmed refusal by letter dated November 27 and returned seller's check. Mundy further testified that between October 2 and October 29, purchasers' offer to settle for $5000 was never withdrawn, that the offer was never rejected, that no counter offer was made, and that, at some point during settlement negotiations "[w]e both also discussed the fact that the losing party may attempt an appeal".

The jury was instructed in the law of contracts, and those instructions are not challenged here. In response to four interrogatories, the jury found that purchasers made an offer "to settle for $5000"; that the offer was not "rejected by or on behalf of" seller; that the offer remained "open after Judge Feller's decision"; and that the offer was "accepted by or on behalf of" seller.

The controlling question is whether purchasers' offer remained open until accepted by seller.

When time is not of the essence, an offer remains open for a reasonable time, *Crews* v. *Sullivan*, 133 Va. 478, 483-84, 113 S.E. 865, 867 (1922), or for such time as the parties treat the offer as continuing, *see R. E. Crummer & Co.* v. *Nuveen*, 147 F. 2d 3, 5 (7th Cir. 1945). *See generally* 1 A. Corbin, *Contracts* § 36 (1963); 1 S. Williston, *Contracts* § 54 (3d ed. 1957; Cum. Supp. 1975). With respect to an offer to settle a dispute, it is not reasonable to assume that the offeror intended his offer to remain open after a jury verdict or a court decision in his favor, and unless the parties thereafter treat it as continuing, the offer expires with the verdict or decision. If the parties so treat the offer and it is timely accepted, a settlement contract arises, and, depending upon which party made the offer, the consideration which supports the contract is either forbearance of the right to rely upon a favorable decision or forbearance of the right to pursue an appeal from an adverse decision. *See Danheiser* v. *Germania Savings Bank & Trust Co.*, 137 Tenn. 650, 194 S.W. 1094 (1917).

Here, the question of fact submitted to the jury was whether purchasers' offer remained open after Chancellor Fellers' opinion in their favor. Seller's attorney testified that, after the chancellor's letter opinion was received, settlement negotiations continued; that he was told that purchasers would accept nothing less than they had first

offered to accept; that their offer was never, by word or conduct, withdrawn or rejected; and that even after acceptance was communicated, the presentment hearing was cancelled and he was told to submit a check in the sum of the original offer. While this testimony was contradicted in part, the jury resolved the conflict in seller's favor.

We hold that the evidence was sufficient to support the factual finding that, after the date of the letter opinion, the parties treated the settlement offer as continuing and that the offer remained open until it was accepted. Accordingly, the decree is

*Affirmed.*