NATIONAL COUNCIL ON COMPENSATION INSURANCE, INC. et al.,

v.

CARO & GRAIFMAN, P.C., and Joseph Gall

No. CIV.3:00CV01925 (AHN).

United States District Court, D. Connecticut.

March 31, 2003.

**174**

Jeanine M. Dumont, David E. Rosengren, Michael A. Fusco, Jodi Lynn Zils Gagne, Pepe & Hazard, Hartford, CT, for Plaintiffs.

Alan M. Friedman, Friedman & Ahern, P.C., Milford, CT, Chase A. Caro, Caro & Associates, White Plains, NY, for Defendants.

### RULING ON MOTION TO DISMISS

NEVAS, District Judge.

Defendants Joseph Gall ("Gall") and Caro & Graifman ("C & G"), move to dismiss this case on several grounds, including (1) lack of subject matter jurisdiction; (2) lack of diversity jurisdiction; (3) improper venue; (4) the presence of a prior pending action; and (5) a failure to state with particularity a claim for which relief can be granted. For the following reasons, the motion [Doc. # 34] is DENIED.

### BACKGROUND

This civil suit arises from a criminal prosecution previously adjudicated before the court. On November 5, 1996, a jury convicted Gall on all twenty-four counts of an indictment that charged him with perpetrating a massive, complex insurance fraud against the plaintiffs in this civil suit.

At Gall's sentencing on April 4, 1997, the court indicated that it would subsequently enter an Order of Restitution ("Restitution Order") as a component of Gall's sentence. Pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. § 3663, Gall submitted a personal financial statement to the court. On July 24, 1997, the court held a hearing on that financial statement and the Restitution Order. On July 30, 1997, the court issued a Restitution Order requiring Gall to compensate the plaintiffs for financial losses in the amount of $13,717,630. The Restitution Order prohibited Gall from liquidating, transferring, or alienating any assets except in satisfaction of the Order.

## I. The Parties

The plaintiffs in this suit—the National Council on Compensation Insurance ("NCCI"), American International Group ("AIG"), and American Policyholders Insurance Company ("APIC")are the three victims of Gall's insurance fraud and the beneficiaries of the court's Restitution Order. NCCI is incorporated in Delaware with its principal place of business in Boca Raton, Florida. AIG is incorporated in New York and has its principal place of business in New York. APIC is a Massachusetts company.

The defendants are Gall and C & G. Gall, a Connecticut resident, is currently incarcerated in Allenwood, Pennsylvania. C & G, a New York law firm, represented Gall and various companies owned by him in civil suits between September 1994 and November 1996. C & G did not represent him in the criminal fraud prosecution.

## II. The Alleged Fraudulent Conveyance

The alleged fraudulent conveyance in question arises from C & G's representation of Gall until a disagreement occurred over legal fees in November 1996. C & G claimed that Gall owed it $1.5 million in unpaid legal fees, whereas he claimed to owe only between $350,000 and $645,000. After C & G filed suit against Gall to recover the outstanding fees, Gall and C & G entered into settlement negotiations. On April 24, 1997, in an effort to resolve this dispute, Gall executed an $800,000 mortgage note, which involved two New York properties, and named C & G as the beneficiary.

On April 25, 1997, the day after the mortgage note was executed, Gall prepared the personal financial statement ordered by the court in the criminal case, and certified that the information contained therein was "true, correct, and complete." This financial statement made no reference to the $800,000 mortgage note. On April 30, 1997, the mortgage was executed in favor of C & G and was recorded on May 14, 1997. The court became aware of this mortgage only after the hearing regarding the Restitution Order on July 24, 1997.

## III. The Dispute Over the Alleged Fraudulent Conveyance

On October 6, 2000, the plaintiffs commenced this action against the defendants, claiming that Gall had fraudulently granted a mortgage to C & G in an effort to hinder the plaintiffs' ability to collect the funds owed under the Restitution Order. Their complaint asks this court to declare the conveyance invalid and unenforceable. One of the properties subject to this mortgage has since been sold, and the proceeds therefrom are being held in an escrow account. All the parties to this action have signed the escrow agreement.

On February 22, 2000, prior to the commencement of this action on October 6, 2000, the defendants brought suit in New York Supreme Court to assert their rights to the funds being held in escrow. In the New York action, NCCI, AIG, and APIC

filed a Motion to Dismiss or Stay in which they argued that the federal action constituted a prior pending action between the parties for the same relief, and that the federal district court was the most appropriate forum to resolve the underlying dispute. C & G opposed the plaintiffs' Motion to Dismiss or Stay the New York action for the same reasons C & G moves to dismiss the instant action. The New York Supreme Court found all of C & G's arguments to be meritless and stayed the state court action pending resolution of this federal action.

## DISCUSSION

The court has considered each ground for dismissal raised by the defendants. None of these grounds has any merit.

### I. *Lack of Subject Matter Jurisdiction*

First, the defendants claim that the court lacks subject matter jurisdiction because the terms of the escrow agreement require that jurisdiction vest in the New York Supreme Court. The language of the escrow agreement states in pertinent part: "Both Mortgagee and Judgment creditor agree to submit to the jurisdiction of Supreme Court New York County, in any action or proceeding regarding the distribution of the Escrow[.]"

■ Although the defendants base their argument primarily on New York state case law, the enforceability of forum selection clauses is properly decided under federal law. *Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990) (holding that questions regarding the enforcement of forum selection clauses are essentially procedural, rather than substantive, and therefore federal law applies). Courts generally do not enforce forum selection clauses "without some further language indicating the parties' intent to make jurisdiction exclusive." *Boutari v. Attiki,* 22 F.3d 51, 52 (2d Cir.

1994). Similar forum selection clauses have been interpreted as conferring jurisdiction in a particular forum, but not excluding jurisdiction in other forums. *See, e.g., Autoridad De Energia Electrica De Puerto Rico v. Ericsson Inc.,* 201 F.3d 15, 18–19 (1st Cir.2000) (interpreting the clause as "an affirmative conferral of personal jurisdiction by consent, and not a negative exclusion of jurisdiction"); *Suter v. Munich Reinsurance Co.,* 223 F.3d 150, 157–58 (3d Cir.2000) (interpreting the clause as evidence that the party to the contract merely waived its right to attack the maintenance of personal jurisdiction over it).

■ The court agrees with the New York Supreme Court's ruling that this language is not exclusive and does not manifest an intent by the parties to make the jurisdiction of the state court exclusive. On the contrary, the plain text of the clause shows that the parties merely agreed to submit to the jurisdiction of the Supreme Court of New York County. In particular, this clause is conspicuously bereft of terms such as "exclusive," "solely," or "must." The lack of such compulsory language forecloses the argument that the New York Supreme Court has exclusive jurisdiction over disputes arising from this document. Thus, because the language of the clause is permissive and not mandatory, the Court finds that there is no basis to dismiss the case for lack of subject matter jurisdiction.

### II. *Diversity Jurisdiction*

Next, the defendants contend that this action should be dismissed because the complaint as originally filed did not include indispensable parties, AIG and APIC, both of whom have since been joined as plaintiffs. The defendants further argue that the joinder of these parties destroys diversity since both AIG and C & G are citizens

of New York. These arguments also are without merit and contravene established Second Circuit precedent.

The Second Circuit has held that an action to collect a judgment does not require an independent jurisdictional basis and may proceed even if the parties are not diverse. *Epperson v. Entertainment Express,* 242 F.3d 100, 104 (2d Cir.2001) In *Epperson,* the Second Circuit reasoned that the conveyance of assets to a non-diverse party should not divest a court of enforcement jurisdiction because this "would encourage judgment debtors to engage in such conduct, not only to avoid payment of the judgment but also to force the winning plaintiff to pursue him to another jurisdiction." *Id.* at 107 n. 10.

█ In the instant case, this court issued the Restitution Order for $13,717,630. Since the plaintiffs claim that Gall fraudulently granted the mortgage for the specific purpose of avoiding the Restitution Order, this action is within the ancillary jurisdiction of this court. *See id.* ("[T]he district court has enforcement jurisdiction in a fraudulent conveyance case because no court should be powerless to enforce its own judgment when a defendant fraudulently conveys assets to avoid that judgment."). Thus, in light of its enforcement jurisdiction over this matter, the court finds that there is no basis for dismissing for lack of diversity between the parties.

III. *Improper Venue*

The defendant's third claim for dismissal is that New York is the proper venue because New York constitutes the forum with the most significant contacts to the litigation. The defendants also argue that Connecticut is an inconvenient forum due to the large number of documents and witnesses that are located in New York. As did the New York Supreme Court, however-

er, this court finds this argument to be equally unavailing.

█ A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b) (1997). The plaintiff is not required to establish that his chosen venue "has the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." *Indymac Mortgage Holdings, Inc. v. Reyad,* 167 F.Supp.2d 222, 237 (D.Conn.2001) (citing *Kirkpatrick v. The Rays Group,* 71 F.Supp.2d 204, 212 (W.D.N.Y.1999)). Venue may be proper in more than one district, and a plaintiff has no obligation to file in the most convenient forum, only in a proper forum. *See Sussman v. Bank of Israel,* 56 F.3d 450, 457 (2d Cir.1995), *cert. denied,* 516 U.S. 916, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995).

█ Under the facts of this case, venue is proper because this court has significant contacts with the events or omissions surrounding the underlying mortgage. The court presided over Gall's criminal case and issued the Restitution Order that forms the underlying basis for this litigation. There is no dispute that Gall is a Connecticut resident and that the mortgage was executed in Connecticut. In addition, the New York Supreme Court determined on its own accord that this court was the more appropriate forum and stayed the New York litigation during the pendency of this suit. In sum, the court finds that defendant's venue argument is meritless.

IV. *The Presence of a Prior Pending Action*

█ Next, the defendants argue that this action should be dismissed due to the

presence of a prior pending action in the New York Supreme Court. The defendants' argument ignores the well-established federal rule that the "pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United Sates,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)(internal citations omitted); *Zemsky v. City of New York,* 821 F.2d 148, 152 (2d Cir.1987). Although the Supreme Court recognizes that "exceptional" circumstances may "permit[ ] the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration," *Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236, those circumstances are not present in this case.

■ The Court has identified six factors that should be considered to determine if the court would be justified in surrendering jurisdiction. The factors are (1) whether either court assumed jurisdiction over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *Id.; Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 23–27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). These factors should be carefully balanced "with the balance heavily weighted in favor of the exercise of jurisdiction." *Zemsky,* 821 F.2d at 152.

■ An application of the relevant *Colorado River* factors reveals that the court would not be justified in surrendering its jurisdiction of this litigation. First, the federal forum is not substantially more inconvenient than the state forum. Because of its close proximity to New York, this court is unpersuaded that its location will cause an undue hardship on the defendants. Second, since state law supplies the rule of decision in all diversity cases, federal courts are equally capable of applying state law.[1] *Nat'l Cas. Co. v. Jordache Enters., Inc.,* 848 F.Supp. 1112, 1117 (S.D.N.Y.1994). Given that the balance is "heavily weighted in favor of the exercise of jurisdiction," the possible presence of an inconvenient forum and a state law issue are insufficient to compel the court to surrender jurisdiction. *See Zemsky,* 821 F.2d at 152. Third, there is little risk of piecemeal litigation because the New York Supreme Court has stayed its case pending the outcome of the federal action. The federal action, moreover, includes all relevant parties and has progressed further in litigation than its state counterpart. Fourth, the state court proceedings will not adequately protect the plaintiffs' rights asserted in the federal complaint because the validity of C & G's mortgage is not at issue before the New York court.[2] In

1. The court reserves its ruling about which state's choice of law rules should apply to the substantive issues presented in this action.

2. In the instant case, the plaintiffs seek a declaratory judgment and ruling regarding the distribution of the escrow funds. NCCI, AIG, and APIC claim that C & G's mortgage is invalid and must be set aside because it was executed in an alleged effort to circumvent the court's Restitution Order. In the suit brought before the New York Supreme Court, the defendants merely seek a declaratory judgment that C & G's mortgage has priority over the plaintiff's judgement liens. Of course, a determination regarding the validity of C & G's mortgage must be made before considering which lien has priority. Nevertheless, the relief prayed for by the parties in the two suits is not identical.

sum, the court finds that the Defendant's argument on the presence of another pending action is without merit.[3]

## V. *Failure to State with Particularity a Claim Upon Which Relief Can be Granted*

Finally, the defendants claim that because the complaint does not state a claim for fraudulent conveyance with particularity as required under Fed.R.Civ.P. 9(b), plaintiffs' complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). A review of the complaint, however, reveals that plaintiff has satisfied this requirement and pled the requisite mental state of fraudulent conveyance with particularity.

 A plaintiff alleging a fraudulent conveyance is required to plead only the requisite mental state with particularity. *Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir.1987) (discussing New York's fraudulent conveyance law). Both the New York and Connecticut fraudulent conveyance laws require that the defendant act with "actual intent" to "hinder, delay or defraud" the creditor. *See* N.Y. Debt. & Cred. Law § 276 (McKinney 1990); Conn. Gen.Stat. § 52–552(e)(2003). Conclusory allegations of scienter are sufficient "if supported by facts giving rise to a 'strong inference' of fraudulent intent." *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir.1993) (citing *Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir.1990)). Actual fraudulent intent may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusual nature of the transaction. *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir.1995).

 Despite the defendants' assertions to the contrary, the plaintiffs' complaint makes sufficient allegations that Gall fraudulently conveyed the $800,000 mortgage to C & G in order to survive a Rule 12(b)(6) motion. According to the plaintiffs, the mortgage note between Gall and C & G was executed the very day before Gall submitted his personal financial statement to this court. On that statement, Gall omitted any mention of the mortgage note, even though the Restitution Order explicitly prohibited him from liquidating, transferring, or alienating any assets except to satisfy the Order. If the plaintiffs can prove that these allegations are true, the defendants' actions would constitute a clear attempt to circumvent the court's Restitution Order. Furthermore, given the Defendants' haste to execute the mortgage prior to the Restitution Order's issuance and the omission of that transaction from Gall's personal financial statement, the court finds that the circumstances surrounding this transaction are more than adequate to support the complaint's allegation that the defendants acted with actual fraudulent intent. Thus, the plaintiff's fraudulent conveyance claim is sufficiently plead to survive a Motion to Dismiss.

---

**3.** Even if this issue were to be decided under New York state law, as the defendants contend it should be, the claim would still be meritless. C & G commenced the New York action on February 22, 2000, by filing and serving a summons with notice, but failed to file a complaint in the New York action until January 19, 2001. NCCI commenced the federal action on October 6, 2000, by serving a summons and complaint. In New York, the service of a summons with notice does not give rise to a "prior action" within the meaning of N.Y. C.P.L.R. 3211(a)(4). *United Enters., Ltd. v. Hill*, 185 A.D.2d 206, 587 N.Y.S.2d 160, 160 (1992). Thus, under New York state law, the New York suit did not precede the federal suit because C & G failed to file a complaint when it served the summons with notice on February 22, 2000.

## CONCLUSION

For the reasons set out above, the defendant's motion to dismiss [Doc. # 34] is DENIED.