POWER PARAGON, INC., Plaintiff,

v.

PRECISION TECHNOLOGY
USA, INC., Defendant.

Civil Action No. 2:08cv222.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 6, 2008.

Jason Emmanuel Manning, Troutman Sanders LLP, Virginia Beach, VA, Michael John Gardner, Troutman Sanders LLP, Norfolk, VA, for Plaintiff.

Richard Scott Toikka, Farkas + Toikka, LLP, Rockville, MD, for Defendant.

## MEMORANDUM OPINION AND ORDER

RAYMOND A. JACKSON, District Judge.

This matter is before the Court on Precision Technology USA, Inc.'s ("Defendant") Rule 12(b)(3) Motion to Dismiss for Improper Venue ("Motion"). Power Paragon, Inc. ("Plaintiff") has filed a memorandum in opposition to Defendant's motion to dismiss and Defendant has submitted a reply memorandum. For the reasons stated herein, Defendant's motion to dismiss for improper venue is **DENIED.**

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a Delaware corporation with its principal place of business in Anaheim, California and provides engineering, development, manufacturing, and integration systems for defense, governmental and advanced industrial applications. (Compl. ¶ 1.) Defendant is a Virginia corporation with its principal place of business in Roanoke, Virginia. (Compl. ¶ 2.) Defendant is a manufacturer and supplier of industrial linear motion actuators for automation, machinery, material handling, and positioning applications. (Compl. ¶ 2.)

Plaintiff filed this suit on May 14, 2008, alleging breach of contract and unjust enrichment due to Defendant's alleged failure to pay certain amounts due under a contract entered into by Defendant and L–3 Communications Corporation ("L–3"), Plaintiff's parent company. (Compl. ¶¶ 5–30.)

This action arises out of the delivery of a single Motor Controller for an Aircraft Barricade Stanchion (the "Product") from Plaintiff to Defendant. The contract controlling this transaction was negotiated and entered into, on or about March 10, 2006, between L–3 in Anaheim, California and Defendant in Roanoke, Virginia. The contract specified that the Product was to be delivered to Defendant on July 31, 2006 and installed on U.S. Navy ship CVN–77 (the "Ship") that is dry-docked in Newport News, Virginia.[1] The contract also re-

---

1. Delivery and installation of the Product is part of a larger contract between the Defen-

quired Plaintiff to provide subsequent field support services.

Primary negotiations began with an email solicitation from Defendant, dated October 5, 2005 and Plaintiff's Technical Proposal, dated November 8, 2005. In response to the Product specifications supplied by Defendant on November 29, 2005, L–3 supplemented its proposal with a letter ("Supplemental Proposal"), dated December 20, 2005.[2] Further correspondence regarding the contract continued via phone and email on February 27 and 28, 2006. L–3 provided a letter in response to the February correspondence ("Response Letter"), dated March 1, 2006, which included pricing for the proposed contract and provided comments to Defendant's proposed Terms and Conditions supplementing the agreement.[3]

Defendant's Purchase Order, dated March 10, 2006, establishes a contract price of $464,962 for the Product and $78,908 for related field support. (Compl. ¶¶ 6–7.) Paragraph 59 of the Terms and Conditions attached to the Purchase Order provides that the laws of Virginia govern any disputes upon which the parties cannot reach a settlement. Defendant's Terms and Conditions also provide that "[v]enue shall be the applicable state or federal court in Roanoke, Virginia." (Def.'s Mem. Supp. Mot. Dismiss Ex. 1 at 6.) Defendant's Purchase Order also references, as supplements, the November 8 Technical Proposal, the December 20 Supplemental Proposal, the March 1 Response Letter,

and a Proprietary Information Agreement.[4]

On or about September 11, 2006, the Product was initially shipped from L–3's facility to Michigan for functional testing; the Product was subsequently shipped to New York for additional testing. (Def.'s Mem. Supp. Mot. Dismiss 2.) Plaintiff later performed the field services specified under the contract. (Compl. ¶ 9.) On or about May 30, 2008, the Product was shipped to the Navy Shipyard in Newport News, Virginia for installation on board the Ship. The Product remains in Newport News and, according to Defendant, no further testing or evaluations have been conducted. (Def.'s Mem. Supp. Mot. Dismiss 2.)

Based on the agreed upon payment terms, Plaintiff was to be paid for the product in seven monthly payments. (Compl. ¶ 7.) Defendant paid the first three milestone payments, totaling approximately $205,000, for the Product; however, the remaining four milestone payments, totaling approximately, $260,000, remain unpaid. (Compl. ¶ 8.) Additionally, Plaintiff contends that Defendant has refused to pay the $78,900 in invoices for post-delivery field support provided by Plaintiff.

On May 13, 2008, Plaintiff filed its Complaint alleging breach of contract and unjust enrichment to recover the unpaid costs associated with the contract between L–3 and Defendant. On June 25, 2008, Defendant filed a motion to dismiss this

---

dant and Northrop Grumman, the prime contractor for construction of the Ship.

**2.** This letter stated that the "proposal [wa]s valid for forty-five (45) days and shall be governed by [L–3's] Terms and Conditions...." (Pl.'s Mem. Opp. Mot. Dismiss Ex. B at 1.)

**3.** Included in this letter was a comment to paragraph 59 of Defendant's Terms and Con-

ditions stating that, "[L–3] would resolve disputes under the Laws of the State of New York."

**4.** Defendant's Attachment to the Purchase Order expressly incorporates four of Plaintiff's eight comments addressed in its Response letter, none of which were the choice of law provision.

case under Rule 12(b)(3) and an accompanying Memorandum in Support. Plaintiff filed its Memorandum in Opposition to Defendant's Motion on July 9, 2008, and Defendant filed its reply on June 15, 2008. Having considered the parties' pleadings, this matter is now ripe for judicial determination.

## II. LEGAL STANDARD

To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a *prima facie* showing of venue. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir.2004) (citing *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir.1988)). In diversity cases, venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). Venue is also appropriate in a judicial district in which a substantial part of property that is the subject of the action is situated. *Id.* A diversity action may also be brought in a judicial district where any defendant resides, if all defendants reside in the same state, or where any defendant is subject to personal jurisdiction, if there is no other district in which the action may be brought. 28 U.S.C. § 1391(a)(1), (3). As a result of the "substantial part" wording of § 1391, it is possible for venue to be proper in several judicial districts. *Mitrano*, 377 F.3d at 405.

## III. ANALYSIS

### A. Section 1391(a)(2)

Plaintiff contends that venue is proper because a substantial part of events or omissions giving rise to the claim occurred in this judicial district. Plaintiff supports its claim by asserting that a fundamental assumption of the contract was that the Product was intended for final installation on the Ship in Newport News and that Defendant engaged in "numerous communications with parties" in Newport News. (Pl. Mem. Opp. Mot. Dismiss. at 6.) In determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on the matters that are in dispute or that directly led to the filing of the action; instead, it should review "the entire sequence of events underlying the claim." *Mitrano*, 377 F.3d at 405. A plaintiff is not required to establish that his chosen venue has the most substantial contacts to the dispute. *See Nat'l Council on Comp. Ins., Inc. v. Caro & Graifman, P.C.*, 259 F.Supp.2d 172, 177 (D.Conn.2003). Rather, it is sufficient that a substantial part of the events occurred in that venue, even if a greater part of the events occurred elsewhere. *Id.*

In considering the sequence of events underlying the claim, the Court considers the following acts: (1) the contract, the breach of which gave rise to this claim, was neither negotiated nor executed in the Eastern District; (2) both delivery and manufacture of the Product occurred outside of the Eastern District; (3) functional testing prior to final acceptance and installation occurred outside of the Eastern District; (4) payments for the Product under the contract occurred in the Western District; (5) field support services for the Product were performed outside of the Eastern District; and (6) final delivery of the Product and installation in the Ship occurred in the Eastern District. Though this is merely a skeletal outline of events leading to the claim, Plaintiff need only establish that one of the events that occurred in the Eastern District is substantial enough to support venue.

Although the standard only requires that a substantial part of the events oc-

curred in the district rather than the most substantial part, the final location of the Product does not meet the "substantial part" threshold. As Defendant argues, a mere "'assumption' that activities would occur in this judicial district subsequent to the accrual of Plaintiff's claims" is insufficient to establish venue in the Eastern District. It is Plaintiff's work under the contract that represents a substantial part of the events and allegedly creates its entitlement to the payment it now seeks. Here, the procurement, fabrication, testing, and delivery of the Product constitute the events that allegedly entitle Plaintiff to the payment sought under the contract. Despite being a "substantial part," these events did not occur in this judicial district, and the events that did occur in the Eastern District are insufficient to establish venue.

This conclusion is strongly supported by *Mitrano,* which concerned a breach of contract action for nonpayment of attorney's fees. In *Mitrano,* the Fourth Circuit held that the performance of the legal services at issue was the event that allegedly entitled the plaintiff to the payment sought under the contract. *Mitrano,* 377 F.3d at 406; *see also Katz v. Mogus,* 538 F.Supp.2d 538 (E.D.N.Y.2007) (holding that seller's allegations that nearly one-fifth of breach of contract damages against buyer for refusal to pay for jewelry constituted significant events to support venue in that district). Here, none of the events or omissions deemed to be a substantial part of the claim took place in this judicial district. Therefore, the "events or omissions" section of § 1391(a)(2) does not support venue in the Eastern District.

■ Although venue is not supported by the "events and omissions" portion of § 1391(a)(2), the current location of the Product, which is the subject of this action, supports venue pursuant to the "property"

section of the statute. Defendant attempts to characterize this lawsuit as a dispute over a contract and not property; however, the Court finds that this is a dispute over property and falls within the ambit of § 1391(a)(2). *See United Fire & Casualty Co. v. Applied Fin., Inc.,* 397 F.Supp.2d 1086 (N.D.Iowa 2005) (holding that action seeking declaratory judgment concerning an equipment lease agreement was a dispute over property rather than contract).

Both parties disagree on the weight that should be given to the final location of the Product; however, both Plaintiff and Defendant agree that, notwithstanding the delay in delivery, the contract contemplated final installation in the Eastern District and the Product is currently located in this judicial district. Although the Product was not delivered to the Eastern District until after the claim was filed, the applicable statute does not condition venue on when the property came to be situated in the judicial district. Therefore, the current location of the Product is substantial, not tangential, to the breach of contract claim and supports venue in the Eastern District.

**B. Section 1391(a)(1)**

■ Although neither Plaintiff nor Defendant addresses § 1391(a)(1), it appears to be dispositive of the venue issue. Venue is proper in the judicial district where the defendant resides. 28 U.S.C. § 1391(a)(1). With regard to venue under § 1391:

> a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an

action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State. . . .

Defendant, as a corporate defendant, is deemed to "reside" in any district in Virginia within which its contacts would be sufficient to subject it to personal jurisdiction. To determine whether Plaintiff's claim supports venue under § 1391(a)(1), the Court looks into Defendant's contacts, both related and unrelated to Plaintiff's claim, with the Eastern District.

■ In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court explained that a defendant-corporation may be subject to personal jurisdiction when its "conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. 2174. This conduct and connection consists of some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state and invokes the benefits and protections of its laws. *Id.* General jurisdiction may be asserted when a defendant's contacts with the forum state are substantial and continuous and systematic, even if unrelated to the instant cause of action. *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 213 (4th Cir.2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

Defendant's contacts with the Eastern District are continuous, systematic and substantial. First, Defendant has at least one ongoing contract with Northrop Grumman which requires Defendant to frequently perform services within the Eastern District. Second, although it is unclear as to the full extent, Defendant has engaged in substantial communications within this judicial district related to such contracts. Finally, Defendant delivered the Product into the stream of commerce in this judicial district, creating continuing obligations between itself and businesses in the forum, availing itself to the privilege of conducting business here. Based on Defendant's contact and connection with the Eastern District, it could reasonably anticipate defending itself here. After assessing the extent of Defendant's contacts with the Eastern District, the Court finds that Defendant's contacts are sufficient to subject it to personal jurisdiction in the Eastern District of Virginia. Therefore, for venue purposes, Defendant resides in the Eastern District of Virginia and venue is proper under § 1391(a)(1).

## C. Forum Selection Clause

There is no dispute that the parties contracted for Plaintiff to provide the Product to Defendant for final installation on he Ship in Newport News, Virginia. However, there is a considerable dispute with respect to which party's terms and conditions are included in the contract. Defendant argues that the forum selection clause in its Purchase Order renders venue in the Eastern District improper. The clause included in Defendant's Purchase Order provides that, "[v]enue shall be the applicable state or federal court in Roanoke, Virginia" and further provides that "settlement will be resolved under the laws of the Commonwealth of Virginia. . . ." (Def.'s Mem. Supp. Mot. Dismiss Ex. 1 at 10.) In contrast, Plaintiff argues that the forum selection clause in Defendant's Purchase Order is not part of the contract because the venue and choice of law terms in Defendant's acceptance materially alter

Plaintiff's December 20 offer. The terms and conditions included in Plaintiff's offer established that "any order shall be subject to [L–3's] terms and conditions ... and acceptance shall be expressly conditioned on assent to such terms and conditions by buyer." (Pl.'s Mem. Opp. Mot. Dismiss Ex. B at 3.) It also stated that "any controversy or claim arising out of ... this contract ... will be finally settled by arbitration ... in [Plaintiff's] county of residence." (Pl.'s Mem. Opp. Mot. Dismiss Ex. B at 8.) Plaintiff further contends that because Defendant's venue and choice of law provisions are in direct conflict with Plaintiff's arbitration provision, the two terms are "knocked out" under title 8.2, section 2–207 of the Virginia Code. (Pl.'s Mem. Opp. Mot. Dismiss 4.)

■■■ In order to determine whether there is a "battle of the forms" issue and how such issue should be addressed, the Court looks to the Virginia version of Uniform Commercial Code. Under title 8.2, section 2–207 of the Virginia Code:

a definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.... Between merchants [the] additional terms become part of the contract unless: the offer expressly limits acceptance to the terms of the offer [or] they materially alter it....

Additionally, section 206 states that, "[unless] otherwise unambiguously indicated by the language or circumstances ... an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods...." Va.Code Ann. § 8.2–206 (2001). Virginia law also provides that an offer remains open for a reasonable time, or for such time as the parties treat the offer as continuing. *Martin v. Basham*, 216 Va. 914, 223 S.E.2d 899, 900 (1976). Once the offer is withdrawn, such withdrawal leaves the matter as if no offer had ever been made. *Va. Hot Springs Co. v. Harrison*, 93 Va. 569, 25 S.E. 888, 889 (1896).

■■■ Plaintiff's argument rests on the belief that its December 20 Supplemental Proposal was the offer and Defendant's March 10 Purchase Order was the acceptance. What Plaintiff fails to take into account in its "battle of the forms" argument is the effect that the actual timing of contract formation had on the terms of its offer. The terms that Plaintiff argues are materially altered by Defendant's Purchase Order are included in the December 20 Supplemental Proposal which renders the offer invalid after forty-five days. Because the language of Plaintiff's offer unambiguously indicated that it was only valid for forty-five days, Defendant could not accept it after February 3, 2006. Thus, Defendant's March 10 Purchase Order cannot serve as an acceptance of Plaintiff's December 20 offer. Rather, the Purchase Order serves as an offer that Plaintiff could accept by prompt manufacturing or shipment or a promise to manufacture or ship. *See* Va.Code Ann. § 8.2–206(1)(b); *see also Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F.Supp.2d 551, 569 (E.D.Va.2006) ("The submission of a purchase order by a prospective buyer is viewed as an offer which may then be accepted or rejected by a seller."). Plaintiff's contention that Defendant's forum selection clause is not part of the contract fails because terms and conditions of Defendant's Purchase Order establish the parameters of the contract.

As such, Defendant's choice of venue provision is the controlling provision in the contract. Plaintiff's argument attempting to incorporate its terms and condition; from its Supplemental Proposal fails.

Having found that the forum selection clause is a term of the Contract, the Court finally turns to the issue of whether the clause is enforceable.

 Parties to a contract may include a choice of venue provision as part of their agreement. *See Bryant Elec. Co., Inc. v. City of Fredericksburg,* 762 F.2d 1192 n. 8 (4th Cir.1985). Such forum selection clause is *"prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Pee Dee Health Care, P.A. v. Sanford,* 509 F.3d 204, 213 (4th Cir.2007) (quoting *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). A forum selection clause is unreasonable if: (1) it was the result of fraud or overreaching; (2) trial in the contractual forum would be so gravely difficult and inconvenient for the complaining party that he would for all practical purposes be deprived of his day in court; or (3) enforcement would contravene a strong public policy of the forum in which the suit is brought. *Sanford,* 509 F.3d at 213–14. The burden is on the party objecting to enforcement of the clause to make such a showing. *Bremen,* 407 U.S. at 15, 92 S.Ct. 1907.

 Plaintiff does not argue that the forum specified in Defendant's Purchase Order is the result of fraud or overreaching or that trial in the Western District would be "gravely difficult and inconvenient;" instead, Plaintiff argues that litigating in its chosen forum, the Eastern District, would be of minimal inconvenience to Defendant. The test, however, is not the lack of inconvenience to the Defendant, but the existence of an inconvenience to the Plaintiff. There appears to be nothing in this forum selection clause that renders it invalid or unenforceable; therefore, the Court finds no reason not to enforce the forum selection clause. This result is consistent with Fourth Circuit cases upholding contractual forum selection clauses found to be enforceable. *See, e.g., Sucampo Pharm., Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544 (4th Cir. 2006) (affirming District court finding that forum selection clause governed plaintiff's complaint and dismissing suit); *Mercury Coal & Coke Inc. v. Mannesmann Pipe & Steel Corp.,* 696 F.2d 315 (4th Cir.1982) (upholding forum selection clause in a contract between a West Virginia coal dealer and New York coal dealer requiring all disputes to be litigated in New York).

The final question is whether dismissal or transfer is appropriate. Transfer, rather than dismissal, is appropriate where the forum selection clause is found to be valid and enforceable. The Court adopts the modern view that transfer is correct, following the *Bremen* Court's view that enforcement of a forum selection clause should not oust a court's jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss for Improper Venue is **DENIED** and this case is **TRANSFERRED** to the Roanoke Division of the United States District Court for the Western District of Virginia for all further proceedings.

The Court **DIRECTS** the Clerk to send copies of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**