COURT OF APPEALS OF VIRGINIA


Present:  Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


CATHERINE C. BURKE

                                                        OPINION BY
v.        Record No. 1799-07-1           JUDGE RANDOLPH A. BEALES
                                                        JUNE 24, 2008
CHARLES R. BURKE


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                        James A. Cales, Jr., Judge

            Diane Pomeroy Griffin for appellant.

            Monica Taylor Monday (Gentry Locke Rakes & Moore, on brief),
            for appellee.


        Catherine R. Burke (wife) appeals from a trial court order that reformed a property

settlement agreement (PSA) which had previously been incorporated into a final decree that

granted her a divorce from Charles R. Burke (husband).  She argues the trial court's remedy for

husband's fraud failed to adequately compensate her, and she argues the trial court erred in

denying her request for attorney's fees.[1]  Husband counters that, pursuant to a provision in the

PSA, neither party can appeal the trial court's decision; therefore, he asks this Court to dismiss

wife's appeal.  Alternatively, he claims the trial court erred in finding he committed fraud.

Finding the PSA precludes appellate review, we dismiss wife's appeal.

                                    BACKGROUND

        Husband and wife separated in 2003 and, in anticipation of a divorce, began to formulate

an agreement regarding their property.  Wife consulted an attorney, whom she had first hired

_____
        [1] Wife does not argue that the trial court erred by refusing to rescind the entire PSA.

approximately five years earlier when the parties had contemplated a separation. Husband, who was a former JAG officer and is currently a licensed attorney in Virginia, did not consult with another lawyer.

Husband served in the military for over twenty years, and he and wife received benefits from the military, including health insurance. Given wife's medical problems and the thoroughness of the health insurance plan, she wanted to continue her coverage under this plan after the divorce. Husband told wife during their negotiations on the PSA that she could continue to receive health insurance through the military after the divorce, and he sent her a copy of 10 U.S.C. § 1078a[2] to review.

Although husband served in the military for twenty-two years, only seventeen of those years were after the parties married. Therefore, under 10 U.S.C. § 1072(2)(F), wife was not entitled to health insurance through the military once the divorce decree was entered. Wife's attorney tried to explain to her that she would be ineligible for military insurance after the divorce, but wife chose to believe husband's representations that she would continue to receive coverage.

Although husband drafted several versions of a PSA, wife's attorney drafted the final version that both parties signed. Section 6 of the PSA said:

> Wife shall continue to benefit from military health care programs as provided by law and until Wife reaches age 65 and eligible for TriCare For Life Husband shall continue to insure Wife with the [MOAA] supplement to TriCare standard coverage.

---

[2] This statute, "Continued health benefits coverage," appears to describe the eligibility requirements for such benefits, but does not explicitly include the requirement that twenty years of the military service must have occurred during the marriage in order for an ex-spouse to continue to receive coverage. That provision is found in 10 U.S.C. § 1072(2)(F), which is referenced in 10 U.S.C. § 1078a(b)(3).

This PSA also included a final provision, not found in husband's drafts, stating that each party agrees that any matter arising out of this agreement shall be decided by any judge of the Circuit Court of the City of Portsmouth, Virginia in a summary non-jury proceeding and that the decision of that judge shall be final, conclusive and non-appealable and binding upon the parties.

After they both signed the PSA, wife filed for divorce, and the trial court entered a final decree on September 13, 2004 that approved, ratified, affirmed, and incorporated the PSA. Less than a month later, husband sent a letter to four military organizations stating that the parties were divorced and noting that the organizations needed to "delist" wife from her military benefits, including health insurance. He noted in the letter that he was of the opinion that wife was entitled to these benefits while they negotiated the PSA, but further research had "proven [him] to be in error."

Upon receipt of this letter, wife filed a bill of complaint, stating the PSA was based on "a mutual mistake of fact that renders performance of the agreement impossible." She asked for an "adequate remedy . . . including but not limited to an order for payment" of her medical expenses "or in the alternative" that the PSA be "set aside." At trial, wife presented the court with a "very specific proposal" for damages, asking that husband be ordered to pay to her the value of the military insurance over her lifetime, approximately $150,000, plus her costs expended on medical care since the divorce and attorney's fees.

After taking evidence and hearing argument, the trial court entered two orders. The first order, dated February 22, 2007, stated "there is clear and convincing evidence to find" husband "deliberately misled" wife and concealed "material facts" about "her future health care coverage, on which she relied to her detriment" when signing the PSA. The court vacated the health care benefits provision and reformed it, requiring that husband pay wife's insurance premium as well as her deductibles and any uncovered medical costs, so that wife received "adequate

consideration for the loss of health care coverage." The second order reaffirmed the earlier

findings and ordered husband to pay wife $3,674.15 for "her costs incurred in connection with

this matter." The court order stated that attorney's fees were not awarded to either party.

ANALYSIS

Husband argues that the parties' PSA specifically precludes appellate review of the trial

court's rulings on any matter related to the PSA and, therefore, this Court should dismiss wife's

appeal. Wife argues that the no-appeal provision is void as against public policy.[3] The Virginia

appellate courts have not previously addressed the viability of this specific type of provision in a

PSA.

PSAs are analyzed as contractual agreements between divorcing parties. Douglas v.

Hammett, 28 Va. App. 517, 523, 507 S.E.2d 98, 101 (1998). Therefore, when considering wife's

argument, we are mindful that, "although contracts that violate public policy are void, courts are

averse to holding contracts unenforceable on the ground of public policy unless their illegality is

clear and certain." Estes Express Lines, Inc. v. Chopper Express, Inc., 273 Va. 358, 364, 641

S.E.2d 476, 478 (2007).

> We long have recognized that a party may enter into an agreement
> in which he waives a significant right.
>
> Generally, a party may waive by contract any right conferred by
> law or contract. If the party being charged with relinquishment of
> a right had knowledge of the right and intended to waive it, the
> waiver will be enforced.

---

[3] Wife also argues that husband did not preserve his argument under Rule 5A:18. In this case, however, husband had no effective opportunity to make this argument previously because a trial court has no authority to prevent a party from appealing its decision. Thus, the trial court could not have ruled and prevented this appeal even if husband had raised the issue. While husband could have filed a separate motion with this Court to dismiss this appeal, nothing requires that he do so. We find Rule 5A:18 does not apply here to exclude husband's argument.
    We note wife does not argue that the no-appeal provision in the contract was tainted by any fraud on the part of husband nor does she argue that the provision is unclear.

Gordonsville Energy, L.P. v. Va. Elec. & Power Co., 257 Va. 344, 355-56, 512 S.E.2d 811, 818 (1999) (citations omitted).

While our appellate courts have previously discussed the voiding of contract clauses on public policy grounds, no Virginia case law directly addresses the issue presented here – whether parties to a PSA can waive their right to appeal by including a specific provision that gives the trial court final review of any dispute. However, the rationales provided in the earlier cases on void contract clauses suggest various principles that this Court should consider when determining whether a clause limiting appellate rights is void on public policy grounds. These cases do not create a standard rule for voiding a contract clause on public policy grounds, but instead suggest a general approach to this issue.

In Estes Express, 273 Va. at 365, 641 S.E.2d at 479, the Supreme Court discussed contract clauses that exempt a party from all liability for future negligence. The Supreme Court found these clauses are void because they leave plaintiffs "with no possible recovery for the defendant[s'] alleged negligence and those same defendants would have been, essentially, judgment-proof despite their negligence." Id. at 366, 641 S.E.2d at 479; see Hiett v. Lake Barcroft Community Ass'n, 244 Va. 191, 196, 418 S.E.2d 894, 896 (1992). Therefore, a contract clause generally is void if it leaves one party with no means to litigate or otherwise receive redress for a breach of the contract. Here, however, the contested clause did not leave the parties without a means of recovery. In fact, wife litigated and essentially won her case in the Portsmouth Circuit Court, as contemplated by the PSA, so the principle expressed in Estes Express does not apply here.

In Kelley v. Kelley, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994), the Supreme Court found, based on public policy reasons, that a clause in a PSA essentially eliminating the father's responsibility to pay child support was void "because it [was] violative of clearly established

law." The Court explained that the provision did more than limit wife's rights, it also "substantially abridged" the children's rights to receive support from both parents and "diminished" the trial court's "power to decree support." Id. Thus, based on Kelley, a clause is void if it restricts a child's right to support from the parents or limits the legislative authority of the trial courts to order such support. Here, however, those principles do not apply. The parties waived only their own individual right to appeal. The PSA did not address any child custody or child support issues, and the authority of the trial court was not limited in any manner.

The Supreme Court has also found a contract provision void on public policy grounds if it expressly violates the Code. See Blake Constr. Co./Poole & Kent v. Upper Occoquan Sewage Auth., 266 Va. 564, 576-77, 587 S.E.2d 711, 718 (2003). Here, however, the Code does not limit the subject matter of PSAs. See Code §§ 20-147 through 20-155. Code § 20-150(8) allows divorcing parties to "contract with respect to" "[a]ny other matter, including their personal rights and obligations, not in violation of public policy or a statute imposing criminal penalty." A clause limiting appellate rights does not expressly violate this code section. In addition, no other statute in the Code explicitly prohibits contract clauses that curtail appellate rights. Therefore, the clause in the PSA here does not violate any Virginia law.

In 1935, the Supreme Court addressed the right to "appeal to the court" in Campbell v. Brotherhood of Locomotive Firemen & Enginemen, 165 Va. 8, 14, 181 S.E. 444, 446 (1935). There, Campbell, a member of the Brotherhood, applied for disability benefits from that association, which the Brotherhood eventually denied. Id. at 10, 181 S.E. at 444. Pursuant to the association's constitution, Campbell appealed this decision through the Brotherhood's organization. Id. Campbell then sued in the circuit court, where his claim was dismissed because the board of directors of the Brotherhood had "definitely rejected" his claim and because the constitution of the organization vested the board "with power to give final judgment." Id. at

- 6 -

11, 181 S.E. at 445. The Supreme Court concluded that the contract was vague, so Campbell had not waived his right to take his grievance with the Brotherhood to court. However, the Court noted in reaching its decision, "The weight of authority is to the effect that the right of ultimate appeal to the court is an inalienable right, and since it is inalienable it can not be bargained away." Id. at 13, 181 S.E. at 446. The Court referenced two principles in support of this conclusion.

> It is against public policy to deny the right of appeal to courts where property is involved. Those who sit in judgment do not truly represent both parties and the contract if it be a contract is to settle a dispute which has not yet arisen and whose character can not be known in advance.

Id. at 14, 181 S.E. at 446.

Clearly, the Supreme Court in Campbell was not using "appeal" as a reference to the *appellate* court, but instead to reference the right to take a controversy and "appeal" it to a court – the *trial* court. Campbell involved a contract between Campbell and the Brotherhood that divested members of all rights to present a case before a neutral tribunal, not the right to appellate review from a trial court's ruling. Therefore, while Campbell limits the ability of parties to restrict review by a trial court,[4] it does not support wife's proposition here that all clauses limiting appellate review are void as against public policy.

Some federal appellate courts have considered this issue and found no-appeal clauses are binding on the parties. See e.g., In re Lybarger, 793 F.2d 136, 139 (6th Cir. 1986) ("[W]e hold

---

[4] How far the holding in Campbell goes is questionable, as the opinion itself states, "We confine this decision to the particular facts before us." Id. at 16, 181 S.E. at 447. Certainly, the Code currently allows arbitration clauses in contracts as an alternative to review by the trial courts. See Code § 8.01-581.01. In short, since Campbell was decided in 1935, much has transpired, and been upheld by the courts, regarding arbitration and other alternative means of dispute resolution. See e.g., Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265 (1995) (discussing the traditional hostility of the courts to arbitration agreements, passage of the Federal Arbitration Act, and the impact of that Act on state law).

that plaintiff waived her right to appeal the District Court's determination regarding the amount of attorney's fees in the Consent Decree."); United States Consol. Seeded Raisin Co. v. Chaddock & Co., 173 F. 577, 579 (9th Cir. 1909) ("[I]t seems to be universally held that, where such an agreement is made upon a valid and legal consideration, either before or after trial, it will be enforced in an appellate court, and the appeal, if taken, will be dismissed . . . ."). Courts in our sister states also have considered "nonappealable" clauses and found them binding. See e.g., Elliott & Ten Eyck P'ship v. City of Long Beach, 67 Cal. Rptr. 2d 140, 145 (Cal. Ct. App. 1997) ("But the parties can agree to waive some normal trial procedures, such as . . . the right to appeal."); C. G. Horman Co. v. Lloyd, 499 P.2d 124, 125 (Utah 1972) (considering "whether one by agreement cannot waive his right to appeal on the grounds of public policy" and holding that "the parties effectively did waive their right to appeal and that such agreement should be binding on the parties"); Harmina v. Shay, 137 A. 558 (N.J. 1927) ("The general rule, however, is that a party may, by express agreement or stipulation before trial, or judgment, waive his right to appeal, and such agreements or stipulations will be enforced . . . . Such agreements are upheld upon the ground of public policy in encouraging litigants to accept as final decisions of courts of original jurisdiction. 3 Corp. Jur. 661 § 533."). Our Supreme Court seemed to agree with these courts when it opined in dicta that a party to a settlement agreement can contract away the right to appellate review. Martin v. Basham, 216 Va. 914, 916, 223 S.E.2d 899, 901 (1976) (recognizing, as valid consideration for a settlement contract, "forbearance of the right to rely upon a favorable decision or forbearance of the right to pursue and appeal from an adverse decision").

While none of the cases *supra* involve exactly the type of situation presented by this case, the Ohio appellate court has considered a no-appeal clause in a PSA. In Brown v. Brown, 172 N.E. 416, 417 (Ohio Ct. App. 1930), the Ohio court held the parties in their PSA "expressly

agreed that each party should be bound" by the ruling of the common pleas court on issues of

support modifications.[5]  The court then considered whether such a provision was enforceable:

> "Though there are a few cases to the contrary, the rule
> prevailing in the great majority of the jurisdictions is that an
> agreement, based on a sufficient consideration, not to appeal or
> take a writ of error, or a release of errors, is valid and binding, and
> when properly pleaded will constitute a bar to proceedings taken in
> violation of the agreement."  2 Ruling Case Law, "Appeal and
> Error," § 39, page 59.

> \*     \*     \*     \*     \*     \*     \*

> In an action to contest a will, the parties entered into a written
> agreement by which they settled the case; the agreement provided
> that, "if any question should hereafter arise between the parties
> hereto as to the construction and enforcement of this agreement,
> the same shall be submitted for decision to this court and its
> decision shall be final."  It was urged that such agreement was
> invalid because it ousted the reviewing courts of jurisdiction; but it
> was held that, as the agreement did not oust all courts of
> jurisdiction, but on the contrary required the decision of a court of
> competent jurisdiction, it was valid and binding on the parties, and
> it was stated by the court in concluding the opinion that "we think
> on grounds of public policy litigants should be encouraged to
> accept as final the decisions of courts of original jurisdiction."
> Hoste v. Dalton, 137 Mich. 522, 100 N. W. 750, 752.  See, also,
> U.S. Consol. Seeded Raisin Co. v. Chaddock & Co. (C. C. A.), 173
> F. 577, 19 Ann. Cas. 1054.

Id. at 417-18.  The Ohio court then dismissed the appeal.  Id. at 418.

We find this reasoning persuasive.  A no-appeal clause, particularly in the context of a

PSA, forces the parties to realize that the litigation must end and that the ruling of the trial court

is final.  Given the contentious nature of some of these cases, such provisions protect both parties

by resolving the dispute more quickly and minimizing costs.  The provision in this case did not

---

[5] Brown initially involved both spousal and child support.  The opinion does not consider whether the two types of support should be treated differently when addressing the enforceability of a clause limiting appellate review.  As the case before us does not involve child support, the issues raised in Kelley, 248 Va. at 298, 449 S.E.2d at 56, need not limit our consideration of Brown's application here.

waive the rights of anyone other than the parties, it allowed neutral review of their dispute, and it did not violate any Virginia statute.  We hold that public policy does not prevent the parties to a PSA from contracting away their right to appellate review of matters addressed therein.  Such provisions of a property settlement agreement are not against public policy.

### CONCLUSION

We find the no-appeal clause in the PSA signed by the parties before us is binding on the parties.  Therefore, this appeal is hereby dismissed.[6]

<u>Dismissed.</u>

---

[6] We deny both parties' requests for attorney's fees related to this appeal.