COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Decker, and O'Brien
Argued at Richmond, Virginia


LATRON DUPREE BROWN

OPINION BY
v.       Record No. 1998-15-2          JUDGE ROBERT J. HUMPHREYS
AUGUST 1, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge[1]

Samantha E. Freed (Lepold & Freed, PLLC, on brief), for appellant.

J. Christian Obenshain, Assistant Attorney General (Mark R. Herring, Attorney General, on brief), for appellee.


Lamont Dupree Brown ("Brown") entered conditional pleas of guilty on multiple charges

stemming from his distribution of cocaine, and now appeals the decisions of the Circuit Court for

Albemarle County (the "circuit court") denying his motion to suppress, on January 30, 2015, and

denying his motion for a continuance and the appointment of new counsel on June 23, 2015.

Brown asserts that the circuit court erred (1) in denying his motion to suppress because the

evidence obtained was the fruit of an illegal protective sweep that occurred before a search of his

residence and (2) erred in refusing to appoint a fifth counsel in violation of his Sixth Amendment

right to counsel.

I.  BACKGROUND

For ninety days between September and December of 2013, detectives were working

with a confidential informant (the "CI") to observe Brown; during that time, the CI purchased

_____

[1] Judge Paul M. Peatross, Jr., presided over the suppression hearing by designation.

cocaine from Brown on at least three occasions. Throughout these observations, Brown was seen coming to and leaving from a particular apartment both before and after the controlled drug buys. Detectives verified that Brown listed that apartment as his residence for his probation and previous arrests.

On December 19, 2013, Brown was arrested on multiple charges related to his distribution of cocaine. Detective Seitz, one of the detectives who had been investigating Brown over the three-month period, had completed "three-quarters of a search warrant" affidavit for the apartment *before* Brown's arrest, and finished drafting the search warrant and affidavit after he "saw what was obtained off [Brown]" from the arrest. Shortly thereafter, Detective Seitz obtained a warrant to search Brown's apartment.

While Brown was arrested at the intersection of Hydraulic Road and Emmett Street, Detectives Lucas and McKay were watching his apartment. Once Detectives Lucas and McKay heard that Brown had been arrested, they conducted what they deemed to be a "protective sweep" of the apartment to ensure no one was inside who could "destroy evidence . . . or possibly . . . lay[] in wait for [them]." Further, Detective McKay testified that Brown was a suspect in a recent shooting, and the detectives were concerned for their safety while executing a search warrant. The protective sweep was a "very quick search" in which "no people were found." The detectives neither searched for nor found contraband or weapons during the protective sweep, and neither Detective McKay nor Detective Lucas spoke with Detective Seitz between the sweep and the time the search warrant was obtained. Afterwards, the detectives stood guard of the apartment, awaiting the search warrant.

Thereafter, while searching the apartment pursuant to the search warrant, detectives found a total of thirty-four "knotted baggies of cocaine," a knife used for cutting cocaine, a gun and cartridges, and multiple documents belonging to Brown.

Brown was initially indicted on three drug-related charges on February 3, 2014, and the circuit court appointed Michael Hemenway as counsel. On March 27, 2014, Brown sent a letter to the circuit court requesting the appointment of new counsel because he felt that Hemenway was not "retrieving the proper paperwork and information [Brown] need[ed] to fully understand" the case, and thus felt he would not be "represented fairly." Hemenway further told the circuit court that the "attorney/client relationship is basically dissolved." The circuit court granted Brown's request and appointed William Tanner as counsel.

Less than two months later, on May 15, 2014, Tanner told the circuit court that Brown "has demanded that [Tanner] move to withdraw" and that Tanner joined in that motion because their relationship was "strained at best." Tanner represented that Brown had "various and sundry issues" with the way Tanner was representing him. The circuit court agreed to appoint another attorney, but noted that it found "nothing wrong with what Mr. Tanner has done to try to help Mr. Brown" and that Tanner was "incapable of going forward because of the lack of cooperation, which I find to be, at this point, unreasonable by Mr. Brown." Thus, the circuit court appointed Stephanie Commander as new counsel, but noted its concern by asking Brown, "[I]f I appoint a third attorney, am I going to be here on a fourth?" Brown responded, "No."

Brown was indicted on August 4, 2014 on six more charges related to his drug offenses during the three-month observation period in 2013. Brown's jury trial was set for December 16, 2014. However, on December 2, 2014, Commander filed a motion to continue the case because Brown was "in conflicts with counsel over the handling of the case and has at times expressed desire for new counsel or to represent himself," that "counsel agrees that there has been a conflict between the Defendant and counsel[,] but not irreconcilable" and that a continuance would be necessary to resolve the conflict. Commander also filed a motion to suppress.

The circuit court granted the motion to continue, and set trial for June 23 and 24, 2015. The court held a hearing on the motion to suppress on December 16, 2014, at which Detectives Seitz, McKay, and Lucas each testified. Detective Seitz, who applied for the search warrant, testified that he would have "obtained a search warrant regardless of" whether the protective sweep had been conducted by the other detectives and that whatever observations may have been made during the protective sweep did not affect his decision to obtain a search warrant. Detective Seitz also testified that he did not communicate with either Detective McKay or Detective Lucas between Brown's arrest and when the search warrant was effectuated. Detectives McKay and Lucas testified to the same effect. Both the search warrant and the supporting affidavit were entered as evidence at the hearing.

The affidavit for the search warrant, written by Detective Seitz, alleged that law enforcement officers observed multiple controlled drug buys over a ninety-day period, in which Brown sold cocaine to a CI, and was often seen coming to and leaving from the apartment before or after those buys. It also confirmed that Brown lived at the apartment and that, "[b]ased on affiant's training and experience, persons involved in the sale of illegal drugs often keep quantities of drugs in their residence . . . prior to the sale" of the drugs, and further that such people keep "ledgers, records, and documents related to drug sales in the residence."

At the hearing on the motion to suppress, Commander conceded that the detectives did not obtain any evidence as a result of the protective sweep. The circuit court also noted on the record that there was no evidence that the detectives who conducted the protective sweep provided any information to Detective Seitz that was "used as a basis for the search warrant." The circuit court then declined to make a ruling on "whether the protective sweep was proper," but held that even if it was improper, the search warrant was not tainted by any evidence

- 4 -

obtained during the protective sweep. Thus, the circuit court found that the search warrant was valid and overruled the motion to suppress.

Approximately five months later, at another pretrial hearing on May 27, 2015, Commander represented to the circuit court that Brown had filed multiple *pro se* motions, despite Commander's counsel on the matter, that Brown was not satisfied with her communication with him, and that he wished to be appointed co-counsel. She told the court that "Mr. Brown feels that I am holding something back and that the Commonwealth is holding something back, and he's saying that he doesn't trust that I have sent him everything, which result[ed] in the [*pro se*] discovery motion that he filed." She represented that she had been trying to address Brown's concerns, but that she was unsure whether she had satisfied him. Although Commander didn't feel as though she needed co-counsel, the circuit court found that, given the severity of the charges, "co-counsel could be of assistance to [Commander]." Thus, the Court appointed Jessica Phillips as co-counsel.

On June 16, 2015, one week before the jury trial was to begin, the circuit court heard Brown's *pro se* motion requesting the court to remove both Commander and Phillips as counsel. At the hearing, Brown told the court that Commander had a "conflict of interest" and that Phillips had given him "false information." The circuit court told Brown that if it dismissed Commander and Phillips, it would not appoint Brown with additional counsel. Brown then incorrectly represented to the court that the two previous attorneys "withdrew on their own. I didn't dismiss them." The Commonwealth aided the court in a more accurate representation of the previous appointments of counsel, and the court determined that it would not appoint further counsel. When asked how he wished to proceed, Brown told the court, "If I don't have a choice, then just Ms. Phillips represent [sic]." However, Phillips informed the court that, in addition to Brown's accusations that she gave him false information, she was only previously appointed as

co-counsel and had not fully reviewed the case; thus, she would not be prepared to represent Brown by herself at the trial, which was approximately one week away. The Commonwealth noted to the court that it perceived Brown's motions as attempts to delay the process.

The circuit court denied Brown's request to keep Phillips as his counsel, and thus relieved both Phillips and Commander as Brown's attorneys. The court found that Phillips could not remain as counsel because Brown represented that she lied to him and that Commander could not remain as counsel due to Brown's continuing requests to remove her as counsel. The court further found that there was a total of four court-appointed attorneys with which Brown had a conflict, and thus it would not be successful to appoint a fifth attorney. When Brown told the court, "I'm not waiving my Sixth Amendment [right] and I cannot represent myself," the court responded that by having "four different counsel removed consecutively after the [c]ourt has appointed them, that essentially the defendant is waiving his right to counsel because the [c]ourt simply cannot continue to appoint counsel when it's obviously ineffective and their actions are not to the liking of Mr. Brown." The court went on: "Mr. Brown, the [c]ourt has found by your actions that you have, in essence, waived your right to counsel, finding that no counsel has been able to work with you and certainly looking at the allegations that you have made against the attorneys, that the [c]ourt does not find that a counsel would be effective." When Brown continued to insist that he could not represent himself, the court appointed Commander as stand-by counsel. The trial remained set to begin on June 23, 2015.

On the day of trial, Brown continued to tell the court that he could not continue without an attorney. The court responded, saying, "I find this case to be similar to McNair v. Commonwealth, 37 Va. App. 687 [(2002),]" and that "the right to counsel is not a right subject to endless abuse by the defendant." Further, the circuit court stated:

> [W]hile the defendant does have a right to counsel, it is not subject
> to being an endless request. The [c]ourt finds where there have

been four attorneys that this defendant has been afforded an absolute right to a fair opportunity to be represented by counsel, and the fact that he has not been able to get along with counsel, that he's accused them of lying, the [c]ourt does not find that it would be effective just to appoint yet one more attorney and grant one more continuance.

The circuit court further found that Brown's "difficulties with the various attorneys amount[ed] to a pattern of conduct."  Brown conferred with stand-by counsel and entered conditional guilty pleas on multiple charges pursuant to North Carolina v. Alford, 400 U.S. 25 (1970),[2] and Code § 19.2-254, which the court found were entered "freely and voluntarily, knowingly and intelligently."  The plea agreement waived Brown's right to appeal the decisions of the circuit court, except the court's "ruling on December 16, 2014 regarding the legality of the search of [Brown's] residence."

Brown later made a motion to withdraw his guilty pleas, which the circuit court denied on September 23, 2015.[3]  Brown now appeals the court's decisions denying his motion to suppress and denying his request for appointment of a fifth counsel.

II.  ANALYSIS

A.  Validity of the Search Warrant

Brown contends the circuit court erred in denying his motion to suppress the evidence discovered during the second search of his apartment, which was supported by a warrant.  Brown may appeal this decision because his plea agreement specified that he could appeal the circuit court's decision on this particular issue.  See Code § 19.2-254.

---

[2] Typically, if incorrectly, termed Alford pleas, such guilty pleas permit "[a]n individual accused of crime [to] voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."  Alford, 400 U.S. at 37.

[3] Although Brown moved to withdraw his guilty pleas in the circuit court, Brown does not assign error to the circuit court's denial of that motion and we therefore need not review that issue on appeal.

When reviewing a circuit court's denial of a motion to suppress, "[t]he burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. We will review the trial court's application of the law *de novo*." McGhee v. Commonwealth, 280 Va. 620, 623, 701 S.E.2d 58, 59 (2010) (quoting Whitehead v. Commonwealth, 278 Va. 300, 306-07, 683 S.E.2d 299, 301 (2009)). Further, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (quoting Jackson v. Commonwealth, 267 Va. 666, 672 594 S.E.2d 595, 598 (2004)).

Brown does not argue the lack of probable cause for the issuance of the search warrant, rather he argues that the circuit court should have granted his motion to suppress because (1) the protective sweep was illegal because it was not supported by reasonable suspicion that the detectives were in danger, and (2) the subsequent search pursuant to the search warrant was tainted by the illegal protective sweep because the protective sweep was mentioned in the affidavit for the search warrant. The Commonwealth responds that the issue of whether the protective sweep was legal was not addressed by the circuit court because, even if the protective sweep was illegal, the affidavit for search warrant did not contain any information obtained from the protective sweep.

Brown asserts that the protective sweep was illegal. However, if a lower court does not rule on an issue, then "there is no ruling for [an appellate court] to review on appeal." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998). Here, the circuit court did not address the issue of whether the protective sweep was legal because it determined that it made no difference since the exclusionary rule would not apply in any event. Thus, since the circuit court did not rule on the propriety of the protective sweep, that issue is not before this

Court on appeal, and we only consider the same issue the circuit court addressed – whether the exclusionary rule would apply to taint the issuance of the search warrant even if the protective sweep was improper.

Brown also argues that because the evidence was obtained pursuant to a warrant that was tainted by evidence gained from the allegedly illegal protective sweep, the circuit court erred in denying his motion to suppress.

However, as the circuit court noted, regardless of whether the protective sweep was justified, the underlying affidavit supporting the search warrant did not contain any information that was obtained during the protective sweep, and thus the warrant could not have been tainted by any illegally-gained information. The only reference to the protective sweep that can be found in the affidavit is the statement, "The residence is currently secured by law enforcement officers." Brown argues on appeal that this sentence in the affidavit taints the entirety of the basis for the search warrant. Aside from that statement, the affidavit contains only information that was obtained from the three-month long observation of Brown's drug activity, or from Brown's arrest. The affidavit contained statements to the effect that Brown was observed selling cocaine "on at least three occasions" and that he was seen "coming from the area" and "walk[ing] back towards" the apartment for which the search warrant was issued both before and after the drug transactions. The affidavit included a confirmation that Brown actually lived at the apartment. It also stated that, "based on affiant's training and experience, persons involved in the sale of illegal drugs often keep quantities of drugs in their residence." Finally, the affidavit contained the statement from Detective Seitz that the apartment would "likely contain further evidence of the crime of distribution of cocaine." The totality of these facts are sufficient to support probable cause for the issuance of the search warrant independent of any information that may or may not have been obtained during the protective sweep.

Further, each of the detectives testified that Detective Seitz, who wrote the affidavit for the search warrant, had no communication with Detectives Lucas and McKay, who conducted the protective sweep, between the time the sweep was conducted and when the search warrant was obtained. No evidence was found during the protective sweep, and thus it would have been impossible for illegal evidence to have been included in the affidavit for search warrant.

Moreover, while the statement in the affidavit that "[t]he residence is currently secured by law enforcement officers" informed the magistrate considering the issuance of the warrant of that detail, it is a fact that is irrelevant to the magistrate's determination of whether probable cause existed to issue the search warrant. Thus, we hold that the protective sweep did not taint the issuance of the search warrant and that the circuit court did not err when it denied Brown's motion to suppress.

## B. Appointment of Counsel

In the circuit court, Brown entered a conditional plea agreement which reserved him the right to appeal the court's denial of his motion to suppress. However, the plea agreement did not reserve his right to appeal the court's decision declining to appoint a fifth counsel.

Counsel for Brown argues that Brown's multiple statements in circuit court that he was not waiving his right to counsel, along with the fact that he entered into his plea agreement without the assistance of counsel, should be sufficient to require this Court to consider his argument. However, we have held that "[g]enerally, a party may waive by contract any right conferred by law or contract. If the party being charged with relinquishment of a right had knowledge of the right and intended to waive it, the waiver will be enforced." Griffin v. Commonwealth, 65 Va. App. 714, 718, 780 S.E.2d 909, 911 (2016) (quoting Burke v. Burke, 52 Va. App. 183, 188, 662 S.E.2d 622, 624 (2008)). Further, once accepted by a circuit court, plea agreements are treated as binding contracts. Id. Here, the circuit court made a factual finding

that "the defendant has freely and voluntarily, knowingly and intelligently pled guilty . . . he understands the plea agreement and what he is charged with and the consequences of his plea agreement."

Brown does not challenge on appeal that his guilty pleas and entry into the plea agreement were knowing, voluntary, and intelligent decisions. It is well settled that when a criminal defendant has entered a plea of guilty to the offense with which he is charged, he has waived and may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. Terry v. Commonwealth, 30 Va. App. 192, 196-97, 516 S.E.2d 233, 235 (1999) (*en banc*). See also Tollett v. Henderson, 411 U.S. 258, 267 (1973) (collecting cases), and Perry v. Commonwealth, 33 Va. App. 410, 412, 533 S.E.2d 651, 653 (2000) ("a voluntary and intelligent [Alford] guilty plea by an accused is a waiver of all defenses other than those jurisdictional"). The only exception for this rule is provided in Code § 19.2-254, which states in pertinent part:

> With the approval of the court and the consent of the Commonwealth, a defendant may enter a conditional plea of guilty in a misdemeanor or felony case in circuit court, reserving the right, on appeal from the judgment, to a review of the adverse determination of any *specified* pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

(Emphasis added).

Pursuant to Code § 19.2-254, Brown was required to specify in his plea agreement exactly which of the circuit court's decisions he wished to have reviewed on appeal. Thus, to appeal his alleged Sixth Amendment violation, Brown must have specifically reserved that claim in his plea agreement and sought the permission of the Commonwealth and the circuit court to do so, just as he did with his claim on the denial of his motion to suppress. See Terry, 30 Va. App. at 196, 516 S.E.2d at 235 ("Terry could have entered a conditional plea, reserving his claim of alleged violation of his Sixth Amendment right, but he entered an unconditional plea instead.").

- 11 -

However, Brown did not seek permission to appeal or otherwise specify his Sixth Amendment claim in his plea agreement, and thus any potential appellate issue was waived when he signed the guilty plea form stating, "I understand that by pleading guilty I waive all objections to the admissibility of evidence and to the legality of my arrest and any search and seizure of my property, except as to this Court's ruling on December 16, 2014 regarding the legality of the search of my residence." The plea agreement further provided, "I understand that by pleading guilty I waive any right of appeal from the decision of the [circuit] [c]ourt[,] except as noted above." Thus, because Brown failed to reserve the right to appeal the issue, we have no statutory authority to review his assignment of error regarding whether the circuit court erred in declining to appoint him a fifth attorney.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court to deny Brown's motion to suppress, and decline to review whether the circuit court erred in denying Brown's motion for the appointment of a fifth attorney because Brown waived his right to appeal that issue when he entered his conditional plea agreement.

<u>Affirmed.</u>