COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, O'Brien and Senior Judge Frank
Argued by teleconference


JOHNNIE MATTHEW CHAPMAN

                                              MEMORANDUM OPINION* BY
v.        Record No. 0838-19-1          JUDGE MARY GRACE O'BRIEN
                                                 MAY 12, 2020
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
                        COUNTY OF JAMES CITY
                       Michael E. McGinty, Judge

              Charles E. Haden for appellant.

              Leanna C. Minix, Assistant Attorney General (Mark R. Herring,
              Attorney General, on brief), for appellee.


       Pursuant to a plea agreement, Johnnie Matthew Chapman ("appellant") entered no contest

pleas to six charges.  Before sentencing, he moved to withdraw the pleas, and after a hearing, the

court denied the motion.  Appellant challenges this ruling on appeal and contends that he did not

enter into the plea agreement knowingly, intelligently, or voluntarily.

                                        BACKGROUND

       Police officers arrested appellant for shooting two individuals in James City County on

September 25, 2016.  Recordings from the jail showed that appellant called his cousin on December

8, 2016, and told her that "if [the witnesses] did not show up for court . . . he would be okay."

Appellant asked his cousin "to talk to [the witness] however she could."  Two days before a

December 15, 2016 preliminary hearing, appellant's cousin telephoned the subpoenaed witness and

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

said: "[m]y cousin told me to tell you if you know what's good for you . . . '[y]ou won't carry your ass to court on Thursday.'"

On March 15, 2017, a grand jury indicted appellant for misdemeanor obstruction of justice, in violation of Code § 18.2-460, as a result of the witness intimidation. The grand jury also indicted appellant for the following felonies in relation to the September 25, 2016 shooting: malicious wounding, in violation of Code § 18.2-51, possession of a firearm by a convicted felon, in violation of Code § 18.2-308.2, use of a firearm in commission of an aggravated malicious wounding, in violation of Code § 18.2-53.1, use of a firearm in commission of an aggravated malicious wounding, second offense, in violation of Code § 18.2-53.1, aggravated malicious wounding, in violation of Code § 18.2-51.2(A), and maliciously shooting into an occupied building, in violation of Code § 18.2-279.

Trial was set for August 15, 2017. On July 31, 2017, appellant moved to continue the trial so his attorney could interview an incarcerated witness. The Commonwealth objected because appellant had previously intimidated witnesses, which caused "somewhat of a challenge" to keep the witnesses engaged. The court denied the continuance. Appellant renewed his motion on August 7 and 11, 2017, and the court denied those motions, as well.

### A. No contest pleas

On August 15, 2017, appellant again moved to continue the trial because four of his subpoenaed witnesses, three of whom were related to him, were not present. Three subpoenas were returned as undeliverable, and one was posted. The Commonwealth had approximately twenty witnesses present and opposed the motion. The court denied the motion.

After a recess, appellant's counsel, Brian Smalls, advised the court that appellant had entered into a plea agreement with the Commonwealth. The agreement provided that appellant would plead guilty to five felonies in addition to the misdemeanor and would receive a sentence

within the sentencing guideline range. The Commonwealth also agreed to *nolle prosequi* the charge for use of a firearm in the commission of an aggravated malicious wounding as a second offense. The plea agreement contained the following provision: "[appellant] agrees he will not withdraw this guilty plea and that such a withdrawal would substantially prejudice the Commonwealth."

Appellant, who was thirty-five years old, had completed eleventh grade and acquired his GED. He entered pleas of "no contest" to each of the five felonies and one misdemeanor. Appellant confirmed that he reviewed the charges and discussed possible defenses with his counsel but stated that he only "[s]omewhat" understood the charges. After the court defined a no contest plea for appellant, he continued to express confusion about the term, so the court gave his counsel an opportunity to communicate with him.

The court then inquired whether appellant "agree[d], not necessarily with the evidence, but that if the [c]ourt were to hear . . . the formal evidence from the witnesses . . . there would be enough evidence to find [him] guilty." Appellant replied that he did not "know if the evidence [was] enough to find [him] guilty." The court gave appellant another opportunity to talk with counsel.

Appellant subsequently acknowledged that he understood the meaning of a "no contest" plea but replied that he was "confused" when the court asked him if he was entering the pleas freely and voluntarily. The court explained that it could not accept the pleas if appellant expressed any hesitation and gave appellant's counsel a copy of the plea colloquy to review with him.

After another short recess, the court questioned appellant about the written colloquy that he and his counsel completed and signed. On a question about whether appellant discussed with his lawyer whether to plead guilty, the word "guilty" was struck through, and "no contest" was written directly above. Appellant acknowledged that he understood the maximum sentences, was entering the pleas freely and voluntarily, and agreed that he was waiving certain rights by not proceeding

- 3 -

with a trial. Appellant also stated that he was satisfied with his counsel's representation. Finally, appellant expressed no confusion when questioned about the provision that provided he could not withdraw his pleas. He agreed that he could not withdraw his pleas and that such a withdrawal would substantially impair the Commonwealth.

After several hours, the court accepted appellant's pleas and the Commonwealth presented a proffer of the evidence. Appellant confirmed the proffer, and the court found appellant guilty of the six charges and granted the Commonwealth's motion to *nolle prosequi* the remaining felony.

B. Motion to Withdraw Pleas

On October 16, 2017, the court continued the sentencing hearing and allowed appellant's counsel to withdraw. At that time, appellant also told the court that he intended to move to withdraw his pleas.

On March 30, 2018, appellant's newly appointed counsel moved to allow appellant to withdraw his pleas and claimed that appellant was "pressured and compelled to enter into [the] plea agreement" "without the benefit of material witnesses to assist him at trial." Appellant also argued that trial counsel coerced him into signing the plea agreement and that he "expressed consistent reservations" during the colloquy about accepting it. The Commonwealth opposed appellant's motion.

The court continued the hearing several times and appointed new counsel to represent appellant. On November 5, 2018, appellant, represented by another new attorney, filed a supplemental notice and motion to withdraw his pleas. He argued that the plea agreement was ambiguous as to whether he fully understood the charges against him and that the questions on the written colloquy all referenced a guilty plea, not a plea of no contest. Further, neither the written plea agreement, nor the written or oral plea colloquies included the sentencing guideline range for the six offenses.

- 4 -

The court heard the motion on November 27, 2018.  Prior to the hearing, the court considered and denied appellant's request for a continuance and agreed to hear the "contract part of the issue" concerning the plea agreement.  Appellant argued that the plea agreement was an invalid contract because there was no legitimate offer and acceptance.  He asserted that he was not properly advised of the consequences of his pleas.  Defense counsel conceded that if the contract argument was unsuccessful, he thought "the [c]ourt is clear that we don't get to whether or not there's a reasonable defense [because we didn't] meet our burden for the first half of the requirement."

### 1.  Appellant's testimony

At the hearing, appellant testified that although he signed the plea agreement on August 15, 2017, Mr. Smalls never discussed any plea negotiations with him prior to the trial date.  Further, appellant stated that he never reviewed the written colloquy questions with Mr. Smalls on the day of trial.  He claimed that his counsel did not inform him about the possible mandatory sentences he could receive as a result of his pleas but did tell him that "if [he] went to trial without [his] witnesses, [he] could get life."  Appellant confirmed information he wrote in a letter to the court in September 2017:  he asked Mr. Smalls to withdraw from the case and he told appellant that "the only way he could resign as [his] cons[el] . . . was [if appellant] sign[ed] the plea [form]."  Appellant testified that Mr. Smalls guaranteed he could "opt out" of the agreement after signing it and that the court could appoint a new lawyer who would help appellant withdraw his pleas.  According to appellant, counsel advised him to "just answer the questions [from the judge during the colloquy] in an orderly fashion," and appellant would be able to withdraw the pleas and "definitely get a new trial."

## 2. Brian Smalls' testimony

Brian Smalls contradicted appellant's testimony. He testified that he was negotiating with the prosecutor in the weeks and days before trial, including the night before the trial date. He communicated those conversations to appellant and discussed the sentencing guidelines with him.

Mr. Smalls told the prosecutor that appellant had information about another criminal case and asked the prosecutor to agree that if "the information . . . wasn't useful or beneficial, that [appellant] should have the ability to withdraw the guilty plea." The prosecutor would not accede to appellant's request, and Mr. Smalls informed appellant of the decision.

Mr. Smalls asserted that on the date appellant entered the no contest pleas, he discussed appellant's pleas with him, explained the term, "no contest," and reviewed the statutory maximum sentence appellant could receive for each charge. He denied that he ever told appellant how to plead or advised him that he would have an option to withdraw his pleas.

Mr. Smalls testified that he reviewed the entire plea agreement and each question on the written plea colloquy with appellant before he entered his pleas at the August 15, 2017 hearing. Mr. Smalls wrote the responses on the written colloquy after each question; however, appellant signed the plea agreement. Mr. Smalls stated that he never coerced appellant in any way or told him he must sign the agreement. Further, appellant never questioned him about the provision prohibiting him from withdrawing his pleas.

## 3. Gabriel Chapman's testimony

Appellant's brother, Gabriel Chapman, also testified. He stated that he visited his brother in jail before trial and that appellant told him that he had been discussing a plea deal with his attorney. At that time, appellant and his brother both decided it was not in his best interest to plead. Chapman acknowledged that he was not present when appellant met with his counsel at the jail or when appellant spoke to Mr. Smalls during the recesses on August 15, 2017.

### 4. Court's Ruling

At the conclusion of the hearing, the court commented: "Obviously, if the [c]ourt rules in [appellant's] favor on the contract issue, [we] don't have to go any further." Appellant responded that if the court found "that the contract is upheld, I think, at that point we set the matter for sentencing."

The court denied appellant's motion to withdraw his pleas. It resolved the issue of credibility against appellant and accepted Mr. Smalls' testimony. It found that "[t]here were clearly negotiations leading up to the day of the trial" and rejected appellant's contract argument. It concluded that the agreement was "negotiated[,] . . . signed, . . . [and] made knowingly and intelligently by [appellant]."

The court also specifically addressed the provision of the plea agreement concerning appellant's agreement not to move to withdraw his pleas:

> [O]ne of the provisions of that agreement clearly was that [appellant] not withdraw his pleas because it would be substantially prejudic[ial] to the Commonwealth, and here we are and for various reasons we're well over a year later from that time.
>
> The Commonwealth clearly saw that as an issue and made that a part of the agreement whereby the Commonwealth dropped some serious charges[.] There were discussions. Mr. Smalls said there were discussions about sentencing guidelines and those sort of things.

The court continued the case for sentencing.

### ANALYSIS

Appellant argues that he should have been allowed to withdraw his no contest pleas because the court erred in finding that the plea agreement contained a valid contract. "The decision whether to allow a defendant to withdraw his plea 'rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case.'" Spencer v. Commonwealth, 68 Va. App. 183, 186 (2017) (quoting Parris v. Commonwealth, 189 Va. 321, 324 (1949)). We review

- 7 -

this decision for an abuse of discretion and will reverse "only upon 'clear evidence that [the ruling] was not judicially sound.'" Id. at 186 (quoting Jefferson v. Commonwealth, 27 Va. App. 477, 488 (1998)).

"[B]y entering a plea of *nolo contendere* [or no contest], the defendant 'implies a confession . . . of the truth of the charge . . . [and] agrees that the court may consider him guilty' for the purpose of imposing judgment and sentence." Commonwealth v. Jackson, 255 Va. 552, 555 (1998) (quoting Honaker v. Howe, 60 Va. (19 Gratt.) 50, 53 (1869)). See also Allen v. Commonwealth, 27 Va. App. 726, 729 n. 1 (1998) (treating a no contest plea as synonymous with a plea of *nolo contendere*). Code § 19.2-296 allows a defendant to withdraw a plea of *nolo contendere* before sentence is imposed. The statute provides, in relevant part:

> A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Code § 19.2-296. Although this statute does not stipulate the legal standard for withdrawal of a plea prior to sentencing, case law has established that a court should grant a motion to withdraw prior to sentencing,

> if there is good cause to believe that "it was entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury."

Bottoms v. Commonwealth, 281 Va. 23, 34 (2011) (quoting Parris, 189 Va. at 325).

Therefore, to prevail on a motion to withdraw a guilty plea, a defendant must (i) establish a good faith basis for making the guilty plea and later seeking to withdraw it, and (ii) proffer evidence of a reasonable basis for contesting guilt. Parris, 189 Va. at 324-25. The court also may consider

- 8 -

whether the Commonwealth would be prejudiced by granting the motion.  See Pritchett v. Commonwealth, 61 Va. App. 777, 787 (2013); Hubbard v. Commonwealth, 60 Va. App. 200, 211 n.4 (2012).

Here, the court analyzed the facts and circumstances of the pleas to determine that appellant advisedly entered into the plea agreement and waived the right to withdraw his pleas.  Appellant agreed that "if [he was] not successful [on the contract issue] . . . we don't get to whether or not there's a reasonable defense [because he didn't] meet [his] burden for the first half of the requirement."  Accordingly, we limit our analysis to determine whether the court abused its discretion in finding that appellant lacked good cause to withdraw his pleas.

In Griffin v. Commonwealth, 65 Va. App. 714, 720 (2016), we affirmed the court's decision to deny a motion to withdraw a plea where the defendant signed an agreement expressly waiving his right to withdraw the plea.  Before accepting the agreement, the court engaged in a colloquy with the defendant who specifically acknowledged his understanding of the provision providing that he could not move to withdraw the plea at a later date.  Id. at 719.

We held that the provision in the plea agreement constituted an "express waiver," "a voluntary action or inaction with intent to surrender a right *in esse* with knowledge of the facts and circumstances which gave birth to the right."  Id. at 718-19.  We applied general contract principles to affirm the court's decision based on the waiver.  Id.  "Generally, a party may waive by contract any right conferred by law or contract.  If the party being charged with relinquishment of a right had knowledge of the right and intended to waive it, the waiver will be enforced."  Id. at 718 (quoting Burke v. Burke, 52 Va. App. 183, 188 (2008)).  Cf. Thomason v. Commonwealth, 69 Va. App. 89, 95-96 (2018) (utilizing the two-factor Parris test to affirm the denial of a pre-sentencing motion to withdraw as opposed to a contract analysis when the court did not specifically question the defendant about the waiver provision in the plea agreement as it did in Griffin).

Here, as in Griffin, appellant signed a plea agreement waiving his right to withdraw his no contest pleas. The court specifically questioned appellant about whether he understood the plea withdrawal provision in the agreement. During the colloquy, appellant acknowledged that he reviewed each question on the written colloquy with counsel and that he was not coerced to sign the agreement. He expressed an understanding that he was waiving certain rights by not proceeding with a trial, including his ability to move to withdraw his pleas, and that such a withdrawal would substantially impair the Commonwealth.

The Supreme Court has warned that focusing solely on "admissions made by a defendant in a [no contest] plea and the attendant colloquy . . . is misplaced in the context of a Code § 19.2-296 motion to withdraw a guilty plea prior to sentencing." Justus v. Commonwealth, 274 Va. 143, 154 (2007). However, we find that the other facts and circumstances of the case support the conclusion that appellant lacked a good faith basis for withdrawing his pleas.

To establish good faith, the pleas must have been submitted "under an honest mistake of material fact or facts" or "induced by fraud, coercion or undue influence and would not otherwise have been made." Parris, 189 Va. at 324. In his motion, appellant claimed that he was "pressured and compelled to enter into a plea agreement" and that his counsel coerced him into signing the agreement despite the "consistent reservations" he expressed during the colloquy. However, the court did not find him credible. We defer to this decision by the "factfinder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Walton v. Commonwealth, 255 Va. 422, 426 (1998).

In its ruling, the court detailed the history of the case pertaining to appellant's continuances and the plea hearing on August 15, 2017. The court recalled that it denied appellant's continuance request that day because the Commonwealth was ready to proceed to trial with a large number of

witnesses present. During the plea hearing, appellant caused "different delays and recesses," ultimately requiring the court to spend "several hours" conducting the pleas.

We affirmed, on similar grounds, a court's decision to deny a motion to withdraw pleas in Cobbins v. Commonwealth, 53 Va. App. 28 (2008). There, the defendant admitted that the only reason he pleaded guilty was to "buy time" for "yet another continuance of his trial so he could dismiss his second lawyer and hire a third." Cobbins, 53 Va. App. at 35. We found "[t]he guilty pleas served as a subterfuge designed to manipulate the court, against its better judgment, into unwittingly continuing the trial date." Id. at 35-36. "Because Cobbins acted in bad faith, he could not justly expect the trial court to reward his duplicitous conduct." Id. at 36.

Likewise, although appellant did not expressly admit that he entered into the plea agreement to "buy time," the court implicitly made that finding in its ruling. The record also supports that conclusion; appellant moved for a continuance sixteen times from the date of his indictment until the hearing on December 17, 2018, and repeatedly sought new counsel approximately five times during that period. Further, a grand jury indicted appellant for obstruction of justice after he intimidated the Commonwealth's witnesses prior to the preliminary hearing. The Commonwealth expressed difficulty in keeping witnesses engaged due to appellant's behavior from jail.

The evidence supports the court's finding that appellant knowingly and intelligently entered into a valid contract and acted in bad faith in moving to withdraw his pleas. Therefore, the court did not abuse its discretion in denying his motion.

CONCLUSION

For the foregoing reasons, we hold the court did not err by denying appellant's motion to withdraw his no contest pleas, and we affirm appellant's convictions for the six offenses.

Affirmed.